UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOAN FIORE; JAVION AND SAM'S 24
HOUR TOWING SERVICE, INC.; CITY
WIDE TOWING, INC.; and PAUL OTT,

    Plaintiffs,

v.

CITY OF DETROIT,

    Defendant.

Case No. 19-10853
Honorable Laurie J. Michelson

**OPINION AND ORDER GRANTING MOTION TO DISMISS [5]**

Joan Fiore and Paul Ott own multiple towing companies. They used to be in business with Joan's ex-husband, Gasper Fiore, who was recently convicted in a public corruption case. They are upset because the City of Detroit stopped doing business with them. So they sued the City in state court, raising a number of claims under state and federal law. After the City removed the case, this Court declined to exercise supplemental jurisdiction over the state-law claims. That left only Plaintiffs' claims that the City violated the Federal Wiretap Act and their right to freedom of association. Now, the City argues that neither states a plausible claim. For the reasons that follow, the City's motion to dismiss is granted.

**I.**

This case arises out of a bribery scandal involving towing companies in the Detroit metro area. The relevant facts are contained in the underlying complaint as well as public court filings in several other cases.

A few years ago, Gasper Fiore (Joan's ex-husband) wanted to secure a towing contract with Clinton Township. *See* Rule 11 Plea Agreement at 2–3, *United States v. Fiore*, No. 16-20732 (E.D. Mich. 2017). So he used an intermediary to bribe one of the Township's trustees. *Id.* Unfortunately for Gasper, the intermediary worked for the FBI. *Id.* Gasper pleaded guilty to federal program bribery on December 20, 2017. Rule 11 Plea Agreement, Tr. of Plea Hearing, *United States v. Fiore*, No. 16-20732 (E.D. Mich. 2017).

Around the same time, Celia Washington was working as a legal advisor to the Chief of the Detroit Police Department. Rule 11 Plea Agreement at 2–3, *United States v. Washington*, No. 17-20662 (E.D. Mich. 2108). She attempted to arrange contracts for certain towing companies in exchange for a bribe. *See id.* On January 2, 2018, she pleaded guilty to federal program bribery. Rule 11 Plea Agreement, Tr. of Plea Hearing, *United States v. Washington*, No. 17-20662 (E.D. Mich. 2018). Public filings in that case reveal that the bribe money was coming from Gasper Fiore.

Before Washington pleaded guilty, the government gave her an affidavit from an FBI agent containing information that had been lawfully collected from Title III wiretaps during the investigation of Washington (the Wiretap Affidavit). (*See* ECF No. 1, PageID.18; ECF No. 5, PageID.56–57.) Washington's defense attorney docketed the Wiretap Affidavit as part of a pre-trial motion to suppress but inadvertently neglected to seal it. (*See* ECF No. 5, PageID.56.) The court later sealed the record. (*Id.*) But the City "has come into possession" of the Wiretap Affidavit anyway. (ECF No. 1, PageID.18.) The Wiretap Affidavit reveals that Joan Fiore "was personally a party to an intercepted conversation," although Plaintiffs' complaint does not describe the contents of that conversation. (ECF No. 17, PageID.190 n.1.)

On May 10, 2018, Joan's towing company, Javion & Sam's 24 Hour Towing Service, and Ott's City Wide Towing, received notice that the City of Detroit was ending their ability to work

for the City. (ECF No. 1, PageID.11.) Shortly afterwards, the City notified Joan and Ott individually that it would not do business with them. (*Id.*) The City also "debarred" them from working for the City "for years to come." (*Id.*)

This lawsuit followed. Plaintiffs brought most of their claims under state law. (*See* ECF No. 1, PageID.11–17, 20–27.) But they also alleged that the City "continues to use and willfully disclose the Wiretap Affidavit . . . to support its actions against Plaintiffs." (ECF No. 1, PageID.18.) That, they say, violates federal law. (*Id.*) In addition, Plaintiffs say that the City "punished [them] for their perceived association with Gasper Fiore," thereby violating their rights to "freely associate" with him. (ECF No. 1, PageID.19–20.)

The City now asks this Court to dismiss both the wiretap claim and the freedom of association claim under Rule 12(b)(6). (*See* ECF No. 5.) Having reviewed the parties' briefs, the Court does not believe oral argument would aid in resolving the motion. *See* E.D. Mich. LR 7.1(f)(2).

**II.**

When a defendant moves to dismiss pursuant to Rule 12(b)(6), the plausibility standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), governs. Under that standard, a court first culls legal conclusions from the complaint, leaving only factual allegations to be accepted as true. *Iqbal*, 556 U.S. at 679. The inquiry then becomes whether the remaining assertions of fact "allow[] the court to draw the reasonable inference that the defendant is liable." *Id.* at 678. Although this plausibility threshold is more than a "sheer possibility" that a defendant is liable, it is not a "'probability requirement.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). Whether a plaintiff has presented enough factual matter to "'nudg[e]'" his claim "'across the line from conceivable to plausible'" is "a context-specific task" requiring

this Court to "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 683 (quoting *Twombly*, 550 U.S. at 570).

Analysis of the complaint "must ordinarily be undertaken without resort to matters outside the pleadings." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016). But "a court may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to the defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein." *Id.*; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (instructing courts to examine "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"); 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2019) (explaining that "matters incorporated by reference or integral to the claim" are "deemed part of every complaint by implication"). "[I]n general a court may only take judicial notice of a public record whose existence or contents prove facts whose accuracy cannot reasonably be questioned." *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005).

### III.

### A.

The Plaintiffs first allege that the City violated Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (Title III), 18 U.S.C. §§ 2510–23.

### 1.

In its Reply, the City argued that Plaintiffs lack standing to bring claims under Title III. (ECF No. 9, PageID.106–107.)[1] While the Court does not ordinarily consider issues raised for the

---

[1] Because this issue was first raised in the Reply, the Court permitted Plaintiffs to file a Sur-reply on the issue. (ECF No. 16.) The Plaintiffs did so. (ECF No. 17.)

first time in a reply brief, jurisdictional issues like standing can be raised at any time. *See* Fed. R. Civ. P. 12(h)(3); *Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017). But the Court believes this is better analyzed as an issue of cause of action. *See Keen v. Helson*, 930 F.3d 799, 802 (6th Cir. 2019). Whether or not a plaintiff has a cause of action under a federal statute is a "straightforward question of statutory interpretation." *Id*. (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014)). A court need only determine "whether [the plaintiff] falls within the class of plaintiffs whom Congress has authorized to sue" using "traditional tools of statutory interpretation." *Id.* (quoting *Lexmark*, 572 U.S. at 127–28).

Section 2520 allows "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used" in violation of Title III to recover damages from the person or entity responsible (other than the United States). 18 U.S.C. § 2520(a). And "the plain meaning of § 2520(a) requires that an aggrieved person must have suffered an actual illegal interception, disclosure, or use of his or her communications before that person may initiate a civil suit." *DirecTV, Inc. v. Wallace*, 347 F. Supp. 2d 559, 565 (M.D. Tenn. 2004).

The statute also covers corporations. *See* 18 U.S.C. § 2510 (defining "person" to include "any individual, partnership, association, joint stock company, trust, or corporation"). They can sue under § 2520 if they have a "possessory interest in the [intercepted] communication." *Smoot v. United Transp. Union*, 246 F.3d 633, 640 (6th Cir. 2001) (quotations omitted). As an example, a corporation has a possessory interest in statements made by its senior director of employee relations in a meeting on its property concerning its employees. *See id.*

But Ott and City Wide failed to plead facts supporting a reasonable inference that they have a possessory interest in any of the interceptions. Indeed, the complaint does not allege that the government captured, or the City disclosed or used, any of their communications. (*See* ECF No.

1, PageID.17–19.) They merely aver that they "have been damaged" by the City's disclosure and use of the Wiretap Affidavit. (ECF No. 1, PageID.19.) That is not enough. *See, e.g., DirecTv, Inc.*, 347 F.Supp.2d at 565 ("an aggrieved person must have suffered an actual, illegal interception, disclosure, or use of his or her communications before that person may initiate a civil suit under 2520.") And when this Court invited Plaintiffs to rectify their omission, they asserted only that Joan was a party to an intercepted conversation. (*See* ECF Nos. 16, 17.) They did not allege that Joan was acting as City Wide's agent. Thus, even assuming that Joan properly plead that her communications were intercepted, and that she was speaking as Javion & Sam's agent, Ott and City Wide plead nothing that supports a reasonable inference that they have a possessory interest in any intercepted communication. So they do not have a cause of action under Title III.

**2.**

And even assuming they do, none of the Plaintiffs have plead a plausible claim. While the complaint fails to disclose the intercepted communications that are the subject of Plaintiffs' Title III claim (and could be dismissed for that reason alone), it references the Wiretap Affidavit that these same parties disclosed in prior litigation before this Court (ECF No. 1, PageID.18). Def.'s Ex. 9, Prelim. Inj. Hrg., July 27, 2018, *Fiore v. City of Detroit*, No. 18-11565 (E.D. Mich. 2018). So this Affidavit is a public record that is central to the Plaintiffs' allegations and may be considered on a motion to dismiss. *See Gavitt*, 835 F.3d at 640. Again, the Affidavit involves wiretap-intercepted conversations in the Celia Washington bribery case. This included a conversation between Gasper Fiore and Joan Fiore in which Gasper told Joan that Celia Washington wanted an email sent to her personal email address that specified which towing rotations they wanted to receive from the City. Gasper instructed Joan to ask their daughter to send

the email. This appears to be the information that Plaintiffs allege the City is using to terminate the parties' business relationship. (ECF No. 1, PageID.18.)

Title III establishes a "comprehensive scheme for the regulation of wiretapping and electronic surveillance." *Gelbard v. United States*, 408 U.S. 41, 46 (1972). Congress enacted Title III to "(1) protect[] the privacy of wire and oral communications, and (2) delineat[e] on a uniform basis the circumstances and conditions under which the interception of wire and oral communications may be authorized." *Id.* at 48 (quoting S. Rep. No. 1097, at 66, *reprinted in* 1968 U.S.C.C.A.N. 2112, 2153). Under Title III, law enforcement can intercept private wire and oral communications only to investigate serious crimes and with prior judicial approval. *See id.* Intentionally intercepting wire, oral, or electronic communications without authorization under Title III is illegal. *See* 18 U.S.C. § 2511(1). So is intentionally disclosing the contents of unauthorized intercepts. *See id.*

But the fruits of lawful wiretaps can be used or disclosed in limited circumstances. *See* 18 U.S.C. § 2517. First, an "investigative or law enforcement officer who, by any means authorized by [Title III], has obtained knowledge" of a wiretap's contents can use the information or disclose it to another officer when doing so is "appropriate to the proper performance" of either officer's official duties. 18 U.S.C. § 2517(1)–(2), (5). Second, a "person who has received, by any means authorized by [Title III], any information" about a wiretap's contents can disclose the information while giving testimony under oath. 18 U.S.C. § 2517(3). Third, disclosure is lawful when national security is at risk. *See* 18 U.S.C. § 2517(6)–(8).

Section 2520 permits recovery of civil damages against those that disclosed or used intercepted communication "in violation of [the] chapter." It also specifically provides that "[a]ny

willful disclosure or use by an investigative or law enforcement officer or governmental entity of information beyond the extent permitted by section 2517" violates Title III. 18 U.S.C. § 2520(g).

But Title III does not apply to "disclosure of intercepted communications to the public incident to, or after, their use under § 2517." *S.E.C. v. Rajaratnam*, 622 F.3d 159, 176 (2d Cir. 2010) (quoting *In re Newsday, Inc.*, 895 F.2d 74, 78 (2nd Cir. 1990)). A common scenario is when wiretap information has already been used as evidence in a criminal trial. *See id.* at 180 (reasoning that a civil discovery request for wiretap information in one party's possession was consistent with Title III); *United States v. Rosenthal*, 763 F.2d 1291, 1294 (11th Cir. 1985) (holding that "Title III creates no independent bar to the public's right of access to . . . wiretap materials legally intercepted and admitted into evidence pursuant to the statute").

Here, the City's alleged disclosure occurred after the communications' use under § 2517. The government complied with the provisions of § 2517 when it produced the Wiretap Affidavit to Washington as part of her criminal proceeding. *See Rajaratnam*, 622 F.3d at 174 (describing disclosure by law enforcement to criminal defendants as "plainly permitted" by § 2517(2)). Washington's lawyer, albeit inadvertently, attached the Wiretap Affidavit to a publicly filed motion and failed to seal it. This disclosure is not proscribed by Title III. *See id*. ("Nothing in § 2517(1) or (2) addresses the rights or duties of criminal defendants to whom intercepted communications are lawfully disclosed to engage in further disclosures."). The City obtained the publicly docketed Wiretap Affidavit. Def.'s Exhibit 9, Prelim. Inj. Hrg., July 27, 2018, *Fiore v. City of Detroit*, No. 18-11565 (E.D. Mich. 2018).[2] Nothing in Title III prevented the City from

---

[2] Relying on *Resha v. United States*, 767 F.2d 285, 287–288 (6th Cir. 1985), this Court denied Joan Fiore's motion to strike the Wiretap Affidavit from the prior litigation.

using or disclosing its contents in making its decision about continuing to do business with the Plaintiffs.

Plaintiffs' reliance on *United States v. Dorfman* does not change this outcome. 690 F.2d 1230 (7th Cir. 1982). First, it is distinguishable on its facts—in *Dorfman*, members of the press sought to unseal wiretap materials that were submitted in a suppression hearing and then ordered sealed by the court. *Id*. at 1231. Here, law enforcement shared wiretap information with a criminal defendant pursuant to § 2517 who then made that information public. Further, Plaintiff's reliance on the Seventh Circuit's observation that any use or disclosure of wiretap information that "is not permitted [by § 2517] is forbidden" is misplaced in this situation. *Id*. at 1232. Even the Seventh Circuit contemplated situations where members of the public would not violate Title III for disclosing wiretap information they obtained through testimony given in open court, even though that subsequent disclosure is not enumerated in § 2517. *Id*. at 1233 ("The draftsmen must have known that most criminal proceedings are conducted in public, so probably they expected (if they thought about the matter) that most testimony authorized by section 2517(3) would end up in the public domain."). So *Dorfman* does not demand a different result and is not inconsistent with this Court's conclusion that Plaintiffs fail to plead a plausible claim under Title III.

**B.**

The City also seeks dismissal of Plaintiffs' First Amendment claim. Plaintiffs allege that "[t]he City has punished [them] for their perceived association with Gasper Fiore, a convicted felon," by not considering them for certain towing work. (ECF No. 1, PageID.19.) Given Joan's "non-nuclear familial relationship with Gasper Fiore" and the other Plaintiffs' long-time friendship with Gasper, Plaintiffs allege that "[t]he City's pronouncement or determination that Plaintiffs are

9

too closely related to Gasper Fiore and therefore may no longer do business with the City violates their First Amendment right to freely associate." (ECF No. 1, PageID.19–20.)

A person's right to "enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617–18 (1984). Only "highly personal relationships" that "have played a critical role in the culture and traditions of the Nation by cultivating and transmitting shared ideals and beliefs" are protected. *Id.* at 618–19. Intimate relationships are characterized by "relative smallness, a high degree of selectivity . . . and seclusion from others. *Id.* at 620. They include family relationships that "involve deep attachments and commitments to the necessarily few other individuals with whom one shares . . . distinctively personal aspects of one's life." *Johnson v. City of Cincinnati*, 310 F.3d 484, 500 (6th Cir. 2002) (quoting *Roberts*, 468 U.S. at 619–20) (finding that a grandmother has "a fundamental freedom of association right to participate in the upbringing of her grandchildren"). Intimate relationships also include personal friendships. *See Anderson v. City of LaVergne*, 371 F.3d 879, 882 (6th Cir. 2004); *Akers v. McGinnis*, 352 F.3d 1030, 1039–40 (6th Cir. 2003).

Business relationships do not support intimate association claims. Typical business enterprises "involve public rather than private aspects of the lives of their participants, and they engage in an activity that has little if anything to do with personal, as distinct from economic, self-realization." *Trade Waste Mgmt. Ass'n, Inc. v. Hughey*, 780 F.2d 221, 237 (3d Cir. 1985). So states can refuse business licenses to people whose professional associates include criminals without implicating the right to intimate association. *See id.* (waste disposal licenses); *Sanitation and Recycling Indus., Inc. v. City of New York*, 107 F.3d 985, 996 (2d Cir. 1997) (same); *Kraft v. Jacka*, 872 F.2d 862, 871 (9th Cir. 1989) (gaming licenses), *abrogated on other grounds by Dennis v. Higgins*, 498 U.S. 439 (1991). *See generally U.S. Citizens Ass'n v. Sebelius*, 705 F.3d 588, 599

(6th Cir. 2013) (stating that an individual's relationship with his health insurance company "do[es] not qualify as [an] intimate association[] warranting constitutional protection").

In this case, the corporate plaintiffs cannot state intimate association claims. They allege only that they "have known and been friends with Gasper Fiore for a long time." (ECF No. 1, PageID.20). But the plaintiffs do not explain, factually or legally, how Gasper could be close friends with a corporation. Moreover, none of the allegations support the inference that Gasper has the sort of small, selective, and secluded relationship with the corporate plaintiffs required to state an intimate association claim. Instead, the only plausible conclusion from the pleadings is that Gasper had a business relationship with the corporate plaintiffs. And neither *Roberts* nor its progeny protect business relationships.

That leaves Fiore's and Ott's intimate association claims. The Court will assume for purposes of this motion that, as alleged, Joan and Gasper's involvement with "family holiday events, birthday parties, and other areas of mutual concern," and Ott being "friends with Gasper Fiore for a long time" would, if true, support an intimate associate designation (notwithstanding Plaintiffs' statement that their links to Gasper are merely "perceived") (ECF No. 1, PageID.19–20.)[3] But Joan and Ott fail to state a claim even if they are Gasper's intimate associates.

Claims that the government violated a person's right to intimate association fall under the Fourteenth Amendment's Due Process Clause. *Hartwell v. Houghton Lake Cmty. Sch.*, 755 F. App'x 474, 478 (6th Cir. 2018); *Anderson*, 371 F.3d at 881.[4] So the Court must first decide which

---

[3] If by using the word "perceived" Plaintiffs are alleging that they are not in fact intimately associated with Gasper, Plaintiffs obviously have no intimate-association claim.

[4] The Plaintiffs base their section 1983 claim on the First, not the Fourteenth, Amendment. (ECF No. 1, PageID.19.) But the Plaintiffs' briefing makes it somewhat clearer that they rely on the right to intimate association described in *Roberts*. (*See* ECF No. 7, PageID.76–77) ("In *Roberts*, the Court noted that the right to intimate association, the freedom to choose "to enter into and maintain certain intimate human relationships," is a "fundamental element of personal

tier of scrutiny applies to the City's actions. When a plaintiff claims that a city policy creates a "direct and substantial interference" with her intimate associations, strict scrutiny applies; otherwise, the policy is subject to rational basis review. *Anderson*, 371 F.3d at 882. A policy is a direct and substantial interference "only where a large portion of those affected by the rule are absolutely or largely prevented from [forming intimate associations], or where those affected by the rule are absolutely or largely prevented from [forming intimate associations] with a large portion of the otherwise eligible population of [people with whom they could form intimate associations]." *Hartwell*, 755 F. App'x at 480 (quoting *Flaskamp v. Dearborn Pub. Sch.*, 385 F.3d 935, 942 (6th Cir. 2004)); *see Akers*, 352 F.3d at 1040 (describing a "total ban on marriage outside one's ethnic group" and a "requirement on non-custodial parents to obtain court permission before any remarriage" as direct and substantial interferences but not "requiring a citizen-alien couple to fill out a form and submit to an INS interview" or "termination from employment of a municipal employee who marries another municipal employee").

Plaintiffs here have not pled facts that show a City policy that directly or substantially interfered with their intimate relations. First, Plaintiffs have not even pled the existence of any policy or rule. They allege only that the City refused to consider them for "certain work" because of their "perceived close association with Gasper Fiore." (ECF No. 1, PageID.19.) Taking these allegations as true, Fiore and Ott are not absolutely or largely prevented from forming intimate associations. Plaintiffs can associate with Gasper as much as they like if they are willing to do towing work for clients other than the City of Detroit. *See Akers*, 352 F.3d at 1041 (applying

---

liberty.") And the Sixth Circuit analyzes intimate association claims derived from *Roberts* under the Fourteenth Amendment, although the case law has not always been clear in this respect. *See Hartwell*, 755 F. App'x at 477–78 (describing the evolution of the Sixth Circuit's intimate association jurisprudence).

instead rational basis review to a rule that prevented MDOC employees from associating with prisoners or their families because "the simple expedient of transferring to another part of the state government or taking employment in the private sector is available"); *Flaskamp*, 385 F.3d at 943 (applying rational basis to a school policy preventing teachers from dating former students for up to a year after graduation because "teachers would still be able to date a wide range of adults of a wide range of ages") *cf. Johnson*, 310 F.3d at 502 (applying strict scrutiny to an ordinance that excluded certain drug offenders from neighborhoods where their relatives lived). In other words, even assuming the City's business decision was a policy, it "did not bar [Fiore and Ott from intimately associating with Gasper], nor did it prevent them [from intimately associating with others in the general population]. It only made it economically burdensome to [associate with people convicted of conspiring to bribe city officials]." *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 712 (6th Cir. 2001). So the City's "policy" is subject to rational-basis review.

A court applying rational basis review will uphold a rule "so long as there is a plausible policy reason" for it. *Flaskamp*, 385 F.3d at 943 (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 11 (1992)). And "it is 'entirely irrelevant for constitutional purposes' whether the plausible reason in fact motivated the decisionmaker." *Id.* (quoting *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993)). Indeed, the defendants "need not offer any rational basis so long as [the court] can conceive of one." *Theile v. Michigan*, 891 F.3d 240, 243 (6th Cir. 2018) (quoting *Ziss Bros. Constr. Co. v. City of Independence, Ohio*, 439 F. App'x 467, 476 (6th Cir. 2011)); *see Miller v. City of Monona*, 784 F.3d 1113, 1121 (7th Cir. 2015) (recognizing that "it is possible for plaintiffs to plead themselves out of court if their complaint reveals a potential rational basis for the actions of local officials").

13

Here, the pleadings show the City's decision to cut business ties with Joan and Ott was rational. Plaintiffs allege that they are Gasper's intimate associates. (*See* ECF No. 1, PageID.19–20.) And they allege that Gasper is a convicted felon. (ECF No. 1, PageID.19.) Numerous public records reveal that he pled guilty to conspiracy to commit federal program bribery in an effort to secure towing contracts. *See, e.g.,* Rule 11 Plea Agreement, Tr. of Plea Hearing, *United States v. Fiore*, No. 16-20732 (E.D. Mich. 2017). Public filings in the Celia Washington case and the Wiretap Affidavit that is integral to the complaint further indicates that Javion & Sam's, as well as other towing companies associated with Gasper, were implicated in the Washington bribery scheme. The City could reasonably think that doing business with Gasper's associates is either corrupt or creates the appearance of corruption. *See Boulevard & Trumbull Towing, Inc. v. City of Detroit*, No. 17-12446, 2019 WL 2266675, at *4 (E.D. Mich. May 28, 2019) (holding that "Gasper Fiore's criminal conduct certainly provided the City with a rational basis to terminate [the] towing permit" of one of Gasper's companies). And this Court has already explained (in another case involving Joan Fiore and Javion) that "[r]ooting out corruption, or the appearance of corruption, is a rational basis for government decision[s]." *Fiore v. City of Detroit*, No. 18-11565, 2018 WL 5014196, at *6 (E.D. Mich. Oct. 16, 2018). And the City had a rational basis regardless of whether or not the Plaintiffs were personally involved in Gasper's criminal activities. *See Systematic Recycling LLC v. City of Detroit*, 635 F. App'x 175, 181 (6th Cir. 2015) (finding that Detroit could rationally decline to renew a contract with the plaintiff that might have been obtained by bribery "[e]ven if the plaintiff itself was not involved in the bribe").

So Plaintiffs fail to state a plausible claim that the City interfered with their right to intimate association.

## IV.

For the reasons stated, the City's motion to dismiss (ECF No. 5) is GRANTED.

IT IS SO ORDERED.

s/Laurie J. Michelson  
LAURIE J. MICHELSON  
UNITED STATES DISTRICT JUDGE

Date: August 21, 2019

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on August 21, 2019.

s/William Barkholz  
Case Manager to  
Honorable Laurie J. Michelson